UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MARK CLASEN,

    Plaintiff,

v.

                                    07-3322

IDOC,
ROGER WALKER,
ANDY OTT,
JOHN CERELOCK,[1]
JAN MILLER,
PAT EDDINGTON,
FRANCIS KAYIRA,
WEXFORD CORP.,
HEALTH PROFESSIONALS, LTD.,
BLOOMINGTON RADIOLOGY,
DR. MITCHELL SUSSMAN,
Dr. A.M. CORDOBA,
DR. JOHNATHON FOSS,

    Defendants.

## Case Management Order (Merit Review)

    The plaintiff, incarcerated in Graham Correctional Center, alleges that he suffered a serious shoulder injury and did not receive necessary surgery until more than 14 months later, causing him severe pain, immobility and now permanent injury because of the delay.

    The court is required to conduct a merit review of the Complaint, to identify cognizable claims and dismiss those that are not. 28 U.S.C. §1915A.

    The merit review standard is the same as the motion to dismiss standard. To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

---

[1] The Court believes Plaintiff means John "Cearlock."

Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007), quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)(other citation omitted).

On July 1, 2005, while incarcerated in Graham Correctional Center, Plaintiff fell and injured his shoulder while playing softball. Plaintiff had obviously suffered a fracture dislocation, but Nurse Eddington told Plaintiff it was just a sprain. She did not refer him to a doctor or treat him other than giving him Motrin.

Plaintiff saw Dr. Kayira on July 8, 2005. Dr. Kayira ordered x-rays. Plaintiff was in extreme pain but Dr. Kayira did not prescribe any pain medicine.

Dr. Sussman at Bloomington Radiology read the x-rays and reported no fractures or joint separations. Plaintiff's bone continued to protrude. In November, 2005, Plaintiff showed Dr. Kayira the protruding bone. Dr. Kayira explained that he had taken no further action because of Dr. Sussman's report. Kayira told Plaintiff that he would be sent out to see an orthopedic doctor, but not until the Spring because it was not in the budget. Further delays and refusals for treatment ensued. Dr. Kayira ordered another set of x-rays in April 2006. Dr. Cordoba of Bloomington Radiology read those x-rays and reported an AC separation with no fracture.

Dr. Kayira saw Plaintiff in June, 2006, and told him that the separation had to be "3rd degree" before anything would be done, even though Plaintiff had obvious deformity, chronic pain, and limited mobility of his arm. Later in June more x-rays were taken. Dr. Foss at Bloomington Radiology reported a third degree separation of the AC joint, no acute fracture or bony abnormality.

In July 2006, over one year after the injury, Dr. Kayira referred Plaintiff to an orthopedic surgeon. The surgeon expressed dismay at the delay, informing Plaintiff that the surgery and outcome would be less favorable. Plaintiff could clearly see that the x-rays showed a broken collarbone and dislocated shoulder. The surgeon diagnosed a fracture dislocation and post-traumatic arthritis.

Dr. Kayira told Plaintiff that "the powers that be" had ordered a second opinion. That second opinion confirmed the deformity, AC instability, dislocation, and ordered surgery. Plaintiff received the surgery 14 months after the injury. The surgical report noted a "huge deformity" and one centimeter of Plaintiff's collarbone had to be removed. Arthritic spurs had to be removed and not all the muscle could be reattached due to atrophy.

The plaintiff states an Eighth Amendment claim for deliberate indifference to his serious medical needs.

"A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's

attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). An objectively serious condition also presents itself if "'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain.'" *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999), *quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff's own description and the attachments to his complaint are sufficient to satisfy the "serious medical need" requirement at this stage.

The "deliberate indifference" requirement is a high hurdle. Deliberate indifference is not negligence or even gross negligence. *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999), *citing Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). To show deliberate indifference, the plaintiff must "show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety." *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001), *citing Farmer v. Brennan*, 511 U.S. at 837; *Zentmeyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000). Deliberate indifference may be inferred "when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate the person responsible did not base the decision on such a judgment." *Estate of Cole v. Pardue*, 94 F.3d 254, 261-62 (7th Cir. 1996); *see also Collingnon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998)(deliberate indifference may be established if "response so inadequate that it demonstrated an absence of professional judgment, that is, that nominally competent professional would not have so responded under the circumstances."). Malpractice or disagreement with a doctor's treatment decisions is not deliberate indifference. *Steele v. Choi*, 82 F.3d 175, 178-79 (7th Cir. 1996); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). However, a prison doctor's disregard of a specialist's recommendations *may* allow an inference of deliberate indifference, depending on the facts of a particular case. *Gil v. Reed*, 381 F.3d 649, 663-64 (7th Cir. 2004).

As for the defendants who are not medical professionals, deliberate indifference generally does not exist "[i]f a prisoner is under the care of medical experts . . . [A] non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . . Perhaps it would be a different matter if [non-medical staff] ignored [an inmate's] complaints entirely, but we can see no deliberate indifference [where the staff] investigated the complaints and referred them to medical providers. . ." *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005). However, deliberate indifference might be shown if prison staff intentionally denied or delayed access to medical care, or intentionally interfered with prescribed treatment. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Deliberate indifference might also exist if "it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment." *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill 2002)(noting that, "except in [that] unusual case, prison officials may reasonably rely on the judgment of medical professionals.")(other citations omitted), *cited with approval by Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006).

The plaintiff alleges that his deformity, immobility and severe pain would have been obvious, even to a layperson. That sufficiently pleads deliberate indifference at this stage against

both the medical and non-medical defendants.

The Court has doubts that Bloomington Radiology or the doctors working there are "state actors." Section 1983 liability reaches only defendants who are "state actors," persons acting under the color of state law. *Gayman v. Principal Financial Serv.*, 311 F.3d 851 (7th Cir. 2002). Private physicians do not become state actors simply by treating inmates. "[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001)(quoted cited omitted). In *West v. Atkins*, 487 U.S. 42 (1988), a private physician provided care to inmates pursuant to a contract with the State. The physician received $52,000 annually to operate clinics at a prison hospital run exclusively for inmates, rendering professional services at the clinic two days out of every week. The Supreme Court held that the physician's treatment of the inmate was fairly attributable the state: "a physician employed by [the State] to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating [the inmate's] injury." 487 U.S. at 56.

Another problem with the claims against Bloomington Radiology and its doctors it that the claims seem more akin to malpractice rather than deliberate indifference. In order to pursue a malpractice claim, Plaintiff must attach an affidavit to his complaint, averring that he has consulted with a qualified physician who in turn has concluded that the case has merit. The physician's report must also be attached to the Complaint. 735 ILCS 5/2-622(1). The plaintiff attaches neither.

However, these determinations are premature on the current pleadings. Plaintiff alleges that Bloomington Radiology provide services to inmates pursuant to a contractual obligation with the State. Accordingly, all defendants will remain in the case until further development of the record.

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. Section 1915A, the court finds that the plaintiff states a claim that the defendants were deliberately indifferent to his serious medical needs, in violation of his rights under the Eighth Amendment to the U.S. Constitution. The case proceeds solely on the federal claim identified in paragraph one above.

2) This case is referred to the Magistrate Judge for entry of a Prisoner Scheduling Order. Defendant John "Cerelock"'s service waivers should be directed to "John Cerelock or John Cearlock."

3) The defendants shall file an <u>answer</u> within the time prescribed by Local Rule. A motion to dismiss is not an answer. The answer must be considered a responsive

pleading under Federal Rule of Civil Procedure 15(a) and should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Case Management Order.

Entered this   27th Day of March, 2008.

                                                **s\Harold A. Baker**

                                                HAROLD A. BAKER
                                        UNITED STATES DISTRICT JUDGE